IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | CRIMINAL ACTION NO. |
| v.               ) | 2:19cr118-MHT |
| ) | (WO) |
| CLARENCE WRIGHT LANE, JR.  ) | |

OPINION

Defendant Clarence Wright Lane, Jr. pled guilty to 10 counts of a 14-count indictment: one count of possessing a firearm known to be stolen in violation of 18 U.S.C. § 922(j), eight counts of selling a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1), and one count of conspiring to distribute and possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846. These counts arose from a series of transactions in January and February 2019 in which Lane and his co-defendant, Khiry Lacey, sold firearms and methamphetamine to a confidential informant of the Bureau of Alcohol, Tobacco, Firearms and Explosives. Lane sold the firearms, and Lacey sold the

methamphetamine.  In January 2020, the court sentenced Lacey to 70 months of imprisonment for his role in the offense.

The court ultimately sentenced Lane to 70 months of imprisonment as well.  At sentencing, Lane avoided a 10-year mandatory-minimum sentence on the methamphetamine conspiracy count because he qualified for "safety valve" relief under 18 U.S.C. § 3553(f).  The court then granted a downward variance because it found the same problems with applying the methamphetamine guidelines of § 2D1.1 of the United States Sentencing Guidelines to Lane's case as it previously found in *United States v. Johnson*, 379 F. Supp. 3d 1213 (M.D. Ala. 2019) (Thompson, J.).  Because of the unusual and possibly unique circumstances of this case, the court writes to explain further its findings and reasoning on the application of the safety valve here.

The government did not contest two of the five findings necessary for the safety valve to apply: that Lane did not have more than four criminal history points

or prior offenses of certain values, and that his offense did not result in death or serious bodily injury.  *See* 18 U.S.C. § 3553(f)(1), (f)(3).  The court found at sentencing that Lane had proved the other three factors as well: that he did not possess a firearm in connection with the offense, that he was not an organizer, leader, manager, or supervisor of others in the offense, and that he had truthfully provided to the government all the information he knew about the offense.  *See* 18 U.S.C. § 3553(f)(2), (f)(4), (f)(5).

As the court stated during Lane's sentencing, the question of whether he possessed a firearm "in connection with the offense," as forbidden by 18 U.S.C. § 3553(f)(2), was a close and difficult one.  As orally explained at sentencing and elaborated below, the court found that Lane had not possessed a firearm in connection with the drug offense because the firearm and drug sales were essentially separate transactions.  In other words, the firearms were simply a second illicit commodity sold

by Lane to the confidential informant at the same time as Lacey sold methamphetamine to the informant.

Under precedent of the Eleventh Circuit Court of Appeals, there is a difference between possessing a firearm during an offense and possessing one "in connection with" the offense. *See United States v. Carillo-Ayala*, 713 F.3d 82, 89-90 (11th Cir. 2013) (drawing a distinction between the safety valve's "in connection with" requirement and the mere possession requirement of U.S.S.G. § 2D1.1(b)(1)). Although Lane received an offense level adjustment under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm during the offense, "not all defendants who receive the enhancement under § 2D1.1(b)(1) are precluded from relief under ... the safety valve." *Id.* at 91.

In *United States v. Carillo-Ayala*, the Eleventh Circuit held that firearms possessed "in connection with" a drug offense so as to preclude safety valve relief are those that have the "potential of facilitating" the offense. *See id.* at 92 (quoting U.S.S.G. § 2K2.1 cmt.

4

14).  When the defendant possesses the firearm in "close proximity" to drugs, the weapon generally has the potential to facilitate the offense because "there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened."  *Id.*  As such, the Eleventh Circuit held that, "A defendant seeking relief under the safety valve, despite his possession of a weapon found in proximity to drug-related items, will have a difficult task in showing that, even so, there is no connection with the drug offense."  *Id.*

A difficult task is not an impossible one.  There are rare circumstances in which a defendant's possession of a firearm in proximity to drugs does not mean that the firearm was possessed "in connection with" the drug offense because there is no possibility that the weapon could have been used to facilitate the drug crime.  As the court found at Lane's sentencing, the facts of this case present these rare circumstances.

5

First, as noted above, Lane had no real involvement in the drug sales other than telling Lacey where to meet him and the confidential informant.  Lacey brought the methamphetamine to the meetings and left with all the money the informant paid for the methamphetamine.  Lane sold guns to the informant, and Lacey sold drugs.  There was no relationship between Lacey's drug sales and Lane's gun sales other than that they occurred side by side.

Second, the presence of the firearms did not increase the likelihood that the confidential informant would purchase the methamphetamine.  Lane had been selling guns to the informant before Lacey and the informant ever came into contact about selling methamphetamine.  The drugs were just an additional item for the informant to buy from Lacey while he was already buying guns from Lane.  The possibility of buying the guns was not presented as encouragement for the informant to buy the drugs, and the guns were not used to urge or pressure the informant to go through with the drug purchases.

Third, Lane received no money from Lacey's drug sales, and Lacey received no money from Lane's gun sales. This confirmed the separate nature of the transactions.

Fourth, none of the guns that Lane sold to the confidential informant were loaded.  Neither Lane nor the informant possessed any ammunition during the sales that would have allowed the guns to be loaded, and there was no ammunition in the vicinity.  Lane also did not carry a personal weapon separate from those he was offering for sale to the confidential informant.

Based on these facts, the court was convinced, and so found factually, that what took place in this case were essentially two separate commercial sales of guns and drugs.  Lane's firearms lacked the nexus with the drugs necessary for him to have possessed the weapons "in connection with" them.  Moreover, the Eleventh Circuit has held that "close proximity" for the purposes of the safety valve "encompasses both physical distance and accessibility."  *United States v. Gordillo*, 920 F.3d 1292, 1300 (11th Cir. 2019) (emphasis omitted).  Because

the guns were not and could not have been loaded during the drug sales, they were not "accessib[le]" to Lane to use in facilitation of the drug offense. In light of these findings, the court found that Lane had met his burden of showing that the safety valve applied in his case.

The court then found that Lane's base offense level was 32 under Guideline 2D1.1(c)(4) of the United States Sentencing Guidelines because his offense involved between 150 and 500 grams of "Ice," or high-purity methamphetamine. His criminal history category was I, yielding a guidelines range of 121-151 months. With the two-level upward adjustment to Lane's offense level for possessing a firearm during the offense, the two-level downward adjustment because the safety valve applied, and the further three-level downward adjustment requested by the government because of Lane's acceptance of responsibility, the court found that Lane's total offense level was 29, for a guidelines range of 87-108 months.

The court then found that a downward variance from this range was appropriate. As the court explained in *United States v. Johnson*, the methamphetamine guidelines of U.S.S.G. § 2D1.1(c) rest on the dual presumptions that the purity and amount of the methamphetamine for which a defendant is responsible indicate the significance of the defendant's role in methamphetamine distribution. *See Johnson*, 379 F. Supp. 3d at 1215. Here, as in *Johnson*, those presumptions proved inaccurate: The quantity of methamphetamine that Lane's co-defendant Lacey sold to the informant and the high purity of that methamphetamine connoted nothing about Lane's role in drug distribution. Indeed, the court found that Lane was not an organizer or leader even of the two-man conspiracy in which he was involved. His connection was yet more peripheral to any broader network of methamphetamine distribution from which Lacey may have obtained the drugs sold in this case.

Because of the large number of guns Lane sold to the confidential informant, however, the court did not grant

the full six-level variance that Lane requested. Instead, the court offset the six-level variance applied in *Johnson* against the four-level increase that Lane would have faced under Guideline 2K2.1(b)(1) for selling multiple firearms if his sentence were based on the firearm counts rather than the drug conspiracy count. Therefore, the court granted a two-level downward variance, resulting in a guidelines range of 70-87 months. The court sentenced Lane to 70 months of imprisonment, which fell within this guidelines range.

DONE, this the 9th day of November, 2020.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**